IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAFECO INSURANCE COMPANY OF AMERICA;
UNITRIN INSURANCE COMPANY;
CALIFORNIA CASUALTY GROUP; AND
FARMERS INSURANCE COMPANY OF ARIZONA,

        Plaintiffs,

vs.                    No. CIV-03-1268 JC/DJS

STEPHEN OLIVER,
DIRECTOR OF THE OFFICE OF CERRO GRANDE FIRE CLAIMS;
THE OFFICE OF CERRO GRANDE FIRE CLAIMS;
FEDERAL EMERGENCY MANAGEMENT AGENCY; and
DEPARTMENT OF HOMELAND SECURITY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Plaintiffs' Motion for Summary Judgment*, filed April 15, 2005 (*Doc. 24*) ("Motion"). At issue in the Motion[1] is whether Plaintiffs' claims were properly denied by the Director of the Office of Cerro Grande Fire Claims ("Director"). The Court, having considered the Motion, the parties' briefs, the administrative record, the relevant authority,

---

[1] This "Motion for Summary Judgment" functions as an appellate brief on the merits and will be treated as such. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d at 1579, 1580 (10th Cir. 1994) ("[r]eviews of agency action in the district courts must be processed as appeals. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure. Motions to affirm and motions for summary judgment are conceptually incompatible with the very nature and purpose of an appeal.").

and being otherwise fully advised, finds the Motion not well-taken. Hence, the Court affirms the Director's determination to deny Plaintiffs' non-subrogation claims.

## I.     Factual/Procedural Background

On May 4, 2000, the United States, acting through the National Park Service, ignited a prescribed burn in the Bandelier National Monument. On May 5, 2000, the burn breached its intended boundaries and the uncontained fire ("Cerro Grande Fire") spread rapidly to other federal and non-federal land. By May 7, 2000, wholesale evacuation of Los Alamos was necessary. On May 13, 2000, the President of the United States declared that twelve New Mexico counties collectively comprised a "Major Disaster Area." Cerro Grande Fire Assistance Act, Pub. Law 106-246, 114 Stat. 511 §102. Ultimately, thousands of New Mexico residents fled their dwellings and hundreds of homes and businesses were destroyed or damaged by the Cerro Grande Fire.

Congress quickly passed, and the President enacted, the Cerro Grande Fire Assistance Act. ("Act" or "CGFAA"). *Id.* The Act provides for the payment of damages to any injured party victimized by the Cerro Grande Fire. CGFAA §103(3)(B).

Pursuant to the Act, Plaintiff Safeco Insurance Company of America ("Safeco") filed claims for business and financial losses on or about August 28, 2002; Plaintiff Unitrin Insurance Company ('Unitrin") filed claims for business and financial losses on August 15, 2002; Plaintiff California Casualty Group ("California Casualty") filed claims for business and financial losses on April 23, 2002; and Farmers Insurance Company of Arizona ("Farmers") filed claims for business and financial losses on August 28, 2002. The claims at issue sought compensation for "extraordinary costs incurred ... in adjusting the substantial number of claims and expenses relating to equipping, relocating, supplying and making adjusting staff available to insureds ...." Civil Action Pursuant to the Cerro

2

Grande Fire Assistance Act ("Complaint") at 2, 3, 4, 5, 6; A.R. at 63-66, 113-116, 224-227, 1149-1151.  Upon denial of these non-subrogation claims, each Plaintiff initiated an administrative appeal and each appeal resulted in denial.  *See* Compl., Exs. A-H; A.R. at 2-3, 94-102, 193-202, 1129-1138.

The case is now properly before the Court for review of the final determinations by the Federal Emergency Management Agency ("FEMA"), Office of Cerro Grande Fire Claims ("OCGFC"), to deny Plaintiff insurance companies' (collectively "Companies") claims for certain compensation under the CGFAA.  *See* CGFA §104 (I).  The Court is asked to determine:  (1) whether FEMA acted *ultra vires* when promulgating the Final Regulation at 44 C.F.R. 295.21(b) and denying Plaintiffs' claims; and (2) whether the administrative record supports the Director's final determination that Plaintiffs' non-subrogation claims are unrecoverable under the Act.  In particular, Plaintiffs challenge the Director's denials on two bases:  (1) the Director exceeded the scope of the congressional delegation to FEMA in determining that the claims were categorically non-compensable under the Act; and (2) the Director's determinations were contrary to both (a) the plain meaning of the Act and (b) the spirit of the Act as illustrated by its legislative history.  Plaintiffs request that the Court find the Final Regulation is in conflict with the Act, that the Director's determinations are not supported by sufficient grounds at law, and order FEMA to pay Plaintiffs' non-subrogation claims.  Alternatively, Plaintiffs request remand to FEMA for further factual development.[2]  *See* Pl's Mot. at

---

[2] Curiously, notwithstanding Plaintiffs' own request for remand in their Motion at 19 ("...or, in the alternative...remand the claims to FEMA for further factual development under FEMA's guidelines and operating procedures"), Plaintiffs argue vehemently against remand in their Reply Brief at 8-10 (devoting an entire section to arguing that remand would be an "extraordinary waste of time," that remand is "probably beyond the Court's jurisdiction at this stage of the litigation," and concluding that "further factual inquiry would not materially assist the resolution...because the basis for FEMA's decision is not factual.")  The Court is left to assume Plaintiffs have withdrawn their initial request for remand.

3

19.

Defendants maintain that Congress vested the Director with plenary authority to determine which types of claims would be compensated and to promulgate the Regulation set forth in 44 C.F.R. 295.21(b). Defendants further contend that the Director's final determinations are supported by substantial evidence on the record as a whole and urge that the Court affirm those determinations. In the event the Court should find insufficient evidence on the record, Defendants request remand to the Director for further review.

## II.    Standard of Review

The parties dispute in part the standard(s) applicable to judicial review of this matter. Insofar as this case requires the Court to identify the scope and standard of review of claims denials under the CGFAA, it is one of first impression. Plaintiffs urge that all matters must be reviewed *de novo*, asserting that the Director relied solely on the law and considered no factual evidence, rendering *de novo* proper under *Inc. v. USPS*, 604 F.2d 1370 (3rd Cir. 1979) and *Aid Ass'n for Lutherans v. U.S.P.S.*, 321 F.3d 1166 (D.C. Cir. 2003). Defendants argue, instead, that the scope of the delegation to FEMA should be reviewed as *ultra vires,* while the Director's determinations on Plaintiff's claims are properly reviewed--and should be upheld-- under the deferential substantial evidence standard. The Court agrees with Defendants that a dual standard is necessary for proper review of Plaintiffs' challenges.

First, reviewing allegedly *ultra vires* actions:

> requires the reviewing court to ascertain the scope of the acting officials' authority and determine whether the officials' action conformed with their authority. Such authority may be broad or narrow depending upon the language employed in the empowering legislation. Similar to the role the courts play in interpreting

>contracts, the courts' role in applying the "ultra vires" standard is limited to examining the four corners of the statute that gives the officials the power to act and determining whether the officials have complied with the statute's language.

*Dep't of Interior v. 16.03 Acres of Land*, 26 F.3d 349, 355 (2nd Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995). It is beyond dispute that this represents the standard properly applied to the agency action in promulgating the Final Regulation.

The plain language of the Act, however, commands that Plaintiffs' challenges to the Director's ultimate decision to deny the claims must be reviewed for substantial evidence. Specifically, the Act states that the reviewing court "shall hear a civil action...on the record made before the Director" and further that the decision of the Director "shall be upheld if the decision is supported by substantial evidence on the record considered as a whole." CGFAA §104(i)(3). Generally, limiting judicial review to the agency's record is favored because it precludes the reviewing court from conducting a *de novo* review of the agency decisions, *see Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402,413-21 (1971), which enjoy a presumption of validity when made on the record. *Ethyl Corp. v. E.P.A.*, 541 F.2d 1, 34 (D.C. Cir.) (*en banc), cert denied*, 426 U.S. 941 (1976).

The Court will first determine whether the Director acted *ultra vires* when promulgating the Regulation, as the Regulation itself formed, in significant part, the basis for denial of Plaintiffs' claims. Ultimately, however, the denial itself entailed some factual inquiry into the nature of the claims asserted. Thus, the Final Determination to deny Plaintiffs' claims must be reviewed for substantial evidence on the record as a whole.

**III.    Discussion**

**A.**     *FEMA's Authority/The Final Regulation*

As discussed, the Court must first determine whether FEMA exceeded the scope of its congressional delegation of authority when implementing The Final Regulation found at 44 C.F.R. 295.21(b). Defendants contend that Congress provided the Director of FEMA with a broad grant of authority to execute the purpose of the Act. The Act reads, in pertinent part:

> 1.    Compensation.--Each injured person shall be entitled to receive from the United States–
> 
>> (A)    compensation for injury suffered by the injured person as a result of the Cerro Grande fire; and
>> (B)    damages described in subsection (d)(4), **as determined by the Director.**

Section 104(A) (emphasis added). The Act limits damages to "actual Compensatory damages measured by injuries suffered." *Id.* at § 104(c)(3). Congress mandated that the Director shall make determinations of damages. *Id.* at § 104(c)(1). Further, Congress provided the Director with authority to "investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages asserted." CGFA at §104(c)(1). Congress also provided that "the Director shall promulgate and publish in the Federal Register interim final regulations for the processing and payment of claims under this title." *Id.*

Congress did not expressly limit the Director's ability to promulgate rules and regulations deemed necessary to carry out its mandate to implement the Act. After public comment, the Director promulgated such rules, including the challenged provision in 44 CFR 295.21(b), which excludes adjusting costs incurred by insurers. The pertinent portion of the Regulation reads as follows:

> (b) Exclusions. Except as otherwise provided in the CGFAA, a Claimant will not receive compensation for any injury or damage that

> is not compensable under the Federal Tort Claims Act and New Mexico law. Punitive damages, statutory damages under § 30-32-4 of the New Mexico Statutes Annotated (1978), interest on claims, attorney's fees and agents' fees incurred in prosecuting a claim under the CGFAA or an insurance policy, adjusting costs incurred by an insurer or other third party with the rights of a subrogee, and taxes that may be owed by a Claimant as a consequence of receiving an award are not recoverable from FEMA.

44 C.F.R. § 295.21(b).

The Director's actions in promulgating the Regulation are within the scope of the delegation and should not be disturbed "unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (citing *United States v. Shimmer*, 367 U.S. 374, 382, 383 (1961). Further, an agency's authority is not limited to the express powers granted by statute, but also includes those powers that arise from the statutory language by fair implication. *See Morrow v. Clayton*, 326 F.2d 36, 44 (10th Cir. 1963).

Plaintiffs contend that the legislative history of the Act reveals that Congress did not intend to allow FEMA to impose "differential treatment on insurers." Mot. at 11. Before briefly examining the legislative history, the Court notes that through its plain language, the Act indeed contemplated some such differential treatment as follows:

> (ii)    Priority.--The Director, to the maximum extent practicable, shall pay subrogation claims submitted under this title only after paying claims submitted by injured parties that are not insurance companies seeking payment as subrogees.

CGFAA § 104(d)(1)(A). Though not dispositive, this language is instructive on two levels. First, it tends to undermine Plaintiffs' insistence that Congress intended insurance companies to be treated exactly like other claimants under the Act. *See* Pl's Mot. at 14 (recognizing Section 104(d)(1), but

then baldly asserting that "in every other instance, the CGFAA indicates a clear intent that there be no distinction between claimants, insurers or individuals."). Second, the language lends support to Defendants' position that the type of compensation Congress contemplated for insurance companies is limited to subrogation, as no overhead or adjusting costs are even mentioned. In fact, the Court finds no express indication anywhere in the text of the Act or its history indicating that such damages were contemplated.

Turning to the legislative history of the Act, the Court again finds ample evidence of congressional intent that subrogation claims must be payed to insurers, but little to support Plaintiffs' position regarding the claims at issue here. For instance, Senator Dominici commented only that payment should be made in the form of "*subrogation* claims against the government on behalf of themselves or the policyholders in the same manner as any other victim of the fire." 146 Cong. Rec. S5256 (June 15, 2000) (emphasis added). Senator Bingaman's comment referenced by Plaintiffs illustrates an intent only that "compensable financial losses will include economic losses for expenses such as insurance deductibles, temporary living expenses, relocation expenses, debris removal costs, and emergency staffing expenses for our governmental entities." 146 Cong. Rec. S5259. This cannot be reasonably interpreted to suggest anything about non-subrogation claims by insurers.

In sum, the Court finds that the Director acted within the scope of the congressional delegation of authority to FEMA when promulgating the Regulation. The exclusion of adjusting costs for insurers was a proper exercise of the agency's regulatory authority. The Court further finds that nothing in that Regulation is contrary to the spirit of the Act as expressed in the Act itself or its legislative history.

B.      *The Final Determination on Plaintiffs' Claims*

Having determined that the Final Rule promulgation was not *ultra vires*, the Court reviews the final determination of the Director to deny Plaintiffs' claims for substantial evidence on the record as a whole. The question is whether substantial evidence exists on the record to support the Director's determination that the claims represent the type of expenses excluded under 44 C.F.R. § 295.21(b).

"Substantial evidence" has been defined as "more than a scintilla, less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sisco v. U.S. Dep't of Health and Human Svs.*, 10 F.3d 739, 741 (10th Cir. 1993). Under a substantial evidence review, the Court does not review the Agency's decision to decide which possible interpretation is best, but rather gives deference to the agency unless its interpretation is plainly erroneous or inconsistent with the regulation. *St. Anthony Hosp. v. U.S. Dep't of Health and Human Svs.*, 309 F.3d 680, 692 (10th Cir. 2002).

Where, as here, there is a "contemporaneous explanation of the agency decision, the validity of that action must stand or fall on the propriety of that finding, judged, of course, by the appropriate standard of review." *Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 549 (1978). Examination of the Director's decision letters, accompanying Claim Synopses, and the record as a whole, shows sufficient detail and findings to support the conclusions reached by the Director. Regarding each Plaintiff's claims, the Director determined the expenses categorically uncompensable, and also properly found, *inter alia*, the expenses asserted were not caused by the fire.[3] *See* Compl.,

---

[3] The Director's determinations also rely, in part, on New Mexico's economic loss doctrine to preclude the claims at issue here. *See, e.g.,* Compl., Ex. A. The Court need not delve into Defendants' probable misapplication of that doctrine in this context, for ample support for the Director's decision exists independent thereof.

Exs. A-H. Further, business interruption costs claimed were excluded because such costs are recoverable only upon a business being closed, which Plaintiffs' businesses were not. *Id.*

In sum, the claims in dispute fall squarely within the category of "adjusting costs incurred by an insurer" and were properly excluded as consistent with 44 C.F.R. § 295.21(b).[4]

### IV.     Conclusion

The Court determines that FEMA did not exceed the scope of its authority when promulgating the Final Regulation. Accordingly, the Director's reliance in part on the Final Regulation when denying Plaintiffs' claims was proper. Further, substantial evidence exists from which the Director properly found that Plaintiffs' non-subrogation claims fall into categories of costs not compensable under the Act per the Regulation. Therefore, the final determination of the Director is AFFIRMED.

WHEREFORE,

**IT IS ORDERED** that *Plaintiffs' Motion for Summary Judgment*, filed April 15, 2005 (*Doc. 24*) is DENIED and the Director's denial of Plaintiffs' non-subrogation claims is AFFIRMED.

Dated this 23rd day of January, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] In the case of Safeco, the claim was submitted via e-mail, seeking to recover a total of $117,825.27 in non-subrogation damages. Safeco, however, offered no supporting documentation as proof of the loss. The Director determined that this, alone, was sufficient grounds on which to deny the claims, but proceeded to undergo a more complete analysis. The Director properly determined, *inter alia*, that the claims asserted represented overhead or administrative costs not caused by the fire. *See* Compl., Ex. A at p. 6.

Counsel for Plaintiffs:

    Eric Sedillo Jeffries, Esq.
    Brian A. Thomas, Esq.
    Jeffries, Rugge & Rosales, P.C.
    Albuquerque, New Mexico

Counsel for Defendants:

    John Zavitz, Esq.
    AUSA
    Albuquerque, New Mexico

    Darren Wall, Esq.
    FEMA
    Washington, DC